**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WAYNE J. WADDELL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 09-0040-WS-M** |
| | ) | |
| **HOLIDAY ISLE, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# ORDER

Almost 40 plaintiffs brought suit in the Northern District of Alabama against Holiday Isle, LLC, ("Holiday Isle"), The Mitchell Company ("Mitchell"), and Paul Wesch.[1] In 2005, various groups of the plaintiffs agreed to purchase 20 condominium units in a Dauphin Island development with the eponymous name of Holiday Isle. In 2008, they sued the defendants on a number of theories. Judge Clemon appointed an arbitrator at the parties' request. (Docs. 15, 20). In September 2008, the arbitrator issued a ruling in favor of the plaintiffs with respect to 17 of the units and in favor of the defendants with respect to the other three. (Doc. 42). The case was transferred to the Southern District in December 2008. (Doc. 66).

Pending before the Court are the following: (1) the defendants' motion to modify or vacate arbitration award, (Doc. 41); (2) the supplemental motion of Wesch and Mitchell to alter or vacate arbitrator's award, (Doc. 50); (3) the prevailing plaintiffs' application to confirm arbitration award and enter judgment thereon, (Doc. 49); and (4) the losing plaintiffs' motions to vacate arbitration award. (Docs. 67, 68). The parties have submitted briefs in support of their respective positions, (Docs. 92-94, 96-99), and the motions are ripe for resolution.

[1]Defendant RBC Centura Bank was dismissed by the plaintiffs, (Docs. 73, 76), and is not material to the pending motions.

**BACKGROUND**

The arbitration complaint asserted a number of claims, some arising out of the alleged failure of the defendants to complete construction in a timely fashion and demanding return of the plaintiffs' earnest money, totaling in excess of $2 million. The parties' contract provided that, if the unit purchased was not completed within two years of a given date, the agreement would be null and void and the purchasers entitled to a refund of all monies paid thereunder. (Doc. 94, Exhibit 1, ¶ 6(B)). As to the prevailing plaintiffs, the arbitrator found their units were not completed by the deadline, and he awarded the plaintiffs, as against all defendants, damages in the amount of their earnest money plus accrued interest. As to the remaining plaintiffs, the arbitrator found their units were completed by the deadline and awarded the defendants sums equal to the losing plaintiffs' earnest money. The arbitrator ruled against the plaintiffs on certain other claims and did not expressly address others. (*Id*., Exhibit 7 at 10-15).

**DISCUSSION**

"Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc*., 508 F.3d 995, 1001 (11th Cir. 2007). The parties invest almost 200 pages of briefing in their separate attempts to shove the camel through the eye of this needle, with but modest success.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court limits its review to those factual and legal arguments the parties have expressly advanced, all others being waived.

**I. Motion to Modify or Vacate.**

Each purchase and escrow agreement ("P&E") executed by the plaintiffs provided that it would be null and void if the "unit" purchased was not "completed" within two years of the P&E's effective date, in which case the purchasers would be entitled to return of all monies paid, plus interest. (Doc. 94, Exhibit 7 at 3). It was plain that the common elements of the development were not complete on Aril 1, 2007, the anniversary date applicable to 16 of the units, or on May 11, 2007, the date applicable to one; it was less clear whether the plaintiffs' private spaces were then complete. (*Id*. at 5-6). The arbitrator thus identified the key issue as the meaning of "unit"; if it extended to the common elements, most of the plaintiffs would prevail, but if not the arbitrator would have to decide if each unit was "completed" on the anniversary date despite remaining "punch list" items. (*Id*. at 6, 7, 11). The arbitrator engaged in a lengthy examination of the issue and concluded that, consistent with the articles of incorporation, "unit" includes both the purchaser's private space and the purchaser's undivided interest in the common elements. (*Id*. at 4-5, 7-10).

The defendants argue that the arbitrator's conclusion is wrong, as evidenced by the Court's recent contrary conclusion in *Murray v. Holiday Isle, LLC*, 2009 WL 857406 at *13-15 (S.D. Ala. 2009), and they identify several bases under the Federal Arbitration Act ("FAA"), as well as beyond it, for addressing the arbitrator's error.

**A. Section 11(a).**

"[T]he ... court ... may make an order modifying or correcting the award upon the application of any party to the arbitration ... [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). The defendants argue that the arbitrator's conclusion that "unit" includes common elements is an evident material mistake in the description of property under Section 11(a). There are at least three fatal

flaws in the defendants' position.

First, relief under Section 11 is limited to modification or correction of an award. *See, e.g.*, *Advanced Bodycare Solutions, LLC v. Thione International, Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008) (modification is available under Section 11, vacatur under Section 10); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 n.9, 1471 (11th Cir. 1997) (same).[2] The defendants seek vacatur of the award under Section 11, (Doc. 41 at 6), but this is not legally permissible. While the defendants also claim to seek modification under Section 11, (*id*. at 2), altering the definition of "unit" would necessarily result in vacatur of the award in favor of the plaintiffs, because that award depends upon "unit" having the meaning the arbitrator assigned to it. Indeed, the defendants insist that changing the definition of "unit" would require judgment in their favor, (Doc. 41 at 6),[3] which is tantamount to vacatur. *See Hesfibel Fiber Optik & Electronik San Ve Tic, A.S. v. Four S Group, Inc.*, 315 F. Supp. 2d 1365, 1367 (S.D. Fla. 2004) (Section 11(a) "does not give a District Court the authority to set aside an entire arbitration award ...").

Second, Section 11 allows a court to modify or correct an award only "so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. It quite plainly was not the arbitrator's intent to utilize the definition of "unit" favored by the defendants, since he expressly rejected that definition. *See NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (Section 11(a) cannot be used to modify damages in a way the arbitrator specifically rejected).

---

[2]The defendants maintain that the Eleventh Circuit has recognized vacatur as a proper relief under Section 11, (Doc. 99 at 2), but the case on which they rely addressed only modification. *See Offshore Marine Towing, Inc. v. MR23*, 412 F.3d 1254, 1255-56 (11th Cir. 2005).

[3]The defendants' position is incorrect, since the plaintiffs would still prevail if, for example, the unresolved question of whether their private spaces were timely completed were to be decided in their favor.

Third, relief under Section 11(a) is limited to "simple formal, descriptive, or mathematical mistake," *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 749 (8th Cir. 1986), not disagreement over factual or legal decisions deliberately made. Most cases discussing Section 11(a) address the alleged miscalculation of figures. These cases make clear that the provision reaches only computational errors, not legal or factual mistakes concerning the amount of damages that should be awarded. *E.g., Grain v. Trinity Health, Mercy Health Services Inc.*, 551 F.3d 374, 378-79 (6th Cir. 2008) (error in determining start and stop dates for interest is not correctable under Section 11(a)); *U.S. Energy Corp. v. Nukem, Inc.*, 1998 WL 738336 at *5 (10th Cir. 1998) (flawed logic in the award of lost profits is not correctable under Section 11(a)); *UHC Management Co. v. Computer Sciences Corp.*, 148 F.3d 992, 998 (8th Cir. 1998) (damages award inconsistent with governing state law is not correctable under Section 11(a)); *see also B.L. Harbert International, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006) (Section 11(a) can be used to correct scrivener's errors in stating the damages awarded). Simply put, Section 11(a) does not apply to "an interpretation of the law and facts as [the arbitrator] saw them." *Capital Wholesale Electric, Inc. v. McCarthy Construction*, 1995 WL 105987 at *2 (9th Cir. 1995); *accord Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998) ("[C]ourts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award" under Section 11(a)).

Section 11(a) necessarily is restricted similarly with respect to alleged mistakes in the description of property. Just as only computational errors may be corrected — not factual or legal errors that led to the numbers being used — so also, only scrivener's errors as to property may be corrected, not factual or legal errors that led to the property definition being used. Thus, a description of a plaintiff's property as Unit 501 when it is in fact Unit 502 can be corrected under Section 11(a), but a conclusion that his unit

includes common elements cannot.[4] This follows not only from the restrictive interpretation of the cases cited above but from the statute's verbiage. What may be corrected is a property "description," not (as the defendants would have it) a property definition. The defendants insist that "describing" the property correctly requires a different application of law than that employed by the arbitrator. (Doc. 41 at 2). Because they challenge the arbitrator's application of law, they cannot successfully invoke Section 11(a).

**B. Section 10(a)(4).**

The sole provision of the FAA on which the defendants' motion to modify or vacate relies is Section 11(a). Nevertheless, in their opposition to the losing plaintiffs' motion to vacate, and again in their reply brief in support of their own motion to vacate — both filed after the plaintiffs responded to the motion to vacate — they make fleeting reference to Section 10(a)(4) as an additional ground for vacating the award in favor of the prevailing plaintiffs. (Doc. 92 at 25-27; Doc. 99 at 2).

District courts, drawing on the parallel appellate rule, have routinely concluded that they ordinarily should not consider arguments presented for the first time in a reply brief.[5] This Court has embraced the same view. *E.g., Hardy v. Jim Walter Homes, Inc.*,

[4]It is unnecessary to identify all the circumstances under which Section 11(a) could properly be applied to correct a mistake in describing property. However, another would be correcting an award to a plaintiff of specific, non-fungible property when other specific property was intended.

[5]In the past year alone, courts in almost two dozen districts have expressed this rule. *E.g., Freeman v. Hulick*, 2009 WL 1851141 at *2 n.1 (N.D. Ill. 2009); *Bishop v. Sam's East, Inc.*, 2009 WL 1795316 at *5 (E.D. Pa. 2009); *Profile Products LLC v. Encap, LLC*, 2009 WL 1686540 at *2 (W.D. Wis. 2009); *International-Matex Tank Terminals v. Chemical Bank*, 2009 WL 1651291 at *2 (W.D. Mich. 2009); *American Traffic Solutions, Inc. v. Redflex Traffic Systems, Inc.*, 2009 WL 775104 at *1 (D. Ariz. 2009); *Superior Production Partnership v. Gordon Auto Body Parts Co.*, 2009 WL 1394835 at *2 (S.D. Ohio 2009); *Heimlicher v. Steele*, 615 F. Supp. 2d 884, 919 n.16

2008 WL 906455 at *8 (S.D. Ala. 2008). The defendants have offered no excuse for their failure to assert Section 10(a)(4) earlier, and the Court can discern none.[6] On the

(N.D. Iowa 2009); *North Idaho Community Action Network v. Hofmann*, 2009 WL 1076165 at *6 (D. Idaho 2009); *Smith Interior Design Group, Inc. v. Bryant*, 2009 WL 996054 at *4 n.1 (S.D. Fla. 2009); *Langston v. North American Asset Development Corp.*, 2009 WL 941763 at *5 n.7 (N.D. Cal. 2009); *Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 349 (S.D.N.Y. 2009); *McSwain v. Schrubbe*, 2009 WL 728453 at *3 (E.D. Wis. 2009); *Thomas v. Correctional Medical Services, Inc.*, 2009 WL 737105 at *13 (D.N.J. 2009); *United States ex rel. Becker v. Tools & Metals, Inc.*, 2009 WL 577604 at *3 (N.D. Tex. 2009); *Caribbean I Owners' Association, Inc. v. Great American Insurance Co.*, 600 F. Supp. 2d 1228, 1245 n.21 (S.D. Ala. 2009); *Pogge v. Sheet Metal Workers International Association Local 3*, 2009 WL 324174 at *3 (D. Neb. 2009); *Lincoln General Insurance Co. v. Access Claims Administrators, Inc.*, 596 F. Supp. 2d 1351, 1372 n.10 (E.D. Cal. 2009); *Cole v. Asurion Corp.*, 2008 WL 5423859 at *11 (C.D. Cal. 2008); *Cooper v. Faith Shipping*, 2008 WL 5082890 at *4 (E.D. La. 2008); *Mehra v. Tetrault*, 2008 WL 4276907 at *3 (W.D.N.Y. 2008); *Ward v. Von Maur, Inc.*, 574 F. Supp. 2d 959, 1000 n.33 (S.D. Iowa 2008); *Galindo v. Asset Recovery Trust*, 2008 WL 3851434 at *2 (D. Utah 2008); *Sibley v. Sprint Nextel Corp.*, 2008 WL 2949564 at *5 n.5 (D. Kan. 2008).

[6]The defendants filed an unorthodox request for the Court to enter a pretrial order concerning a host of items, including "amendments to the pleadings," prior to "a determination of any briefing schedule upon the merits" of the parties' motions. (Doc. 74, ¶ 3). The Court rejected the request because the defendants "identif[ied] no authority for the proposition that an arbitrator's award opens the floor to motion practice, amendments to the pleadings, or discovery." (Doc. 80 at 2). *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1402 (2008) (applications to confirm, vacate or modify under the FAA "get streamlined treatment as a motion"). The defendants then filed a motion for a pretrial conference to determine such things as "cut-off dates for filing additional and supplemental pleadings." (Doc. 88, ¶ 2). The Court again rejected the request for want of explanation as to why a pretrial conference was needed, including authority for the proposition that the parties to an existing federal case may file additional "pleadings" after the case has proceeded to arbitration. (Doc. 90 at 4).

The defendants seem to suggest that the Court thereby "allow[ed]" them to raise additional grounds for vacating the award in their reply brief, (Doc. 92 at 25), but this is patently incorrect. The Court addressed only the filing of amended pleadings, not the filing of motions or briefs. The defendants could not help but know this, both because a pleading is not a motion or brief, *see* Federal Rule of Civil Procedure 7(a), and because they themselves distinguished "amendments to the pleadings" from "briefing ... upon the

contrary, since the defendants' principal brief was filed in early October 2008 and the plaintiffs' response was not filed until late April 2009,[7] the defendants had an extraordinarily long time in which to sift and select their argument, and their failure to raise Section 10(a)(4) cannot be deemed anything other than a deliberate strategic decision. The defendants' failure to raise Section 10(a)(4) in a timely manner of itself requires rejection of their position. However, even were the Court to entertain the defendants' tardy argument, it would fail.

"[T]he ... court ... may make an order vacating the award upon the application of any party to the arbitration ... [w]here the arbitrators exceeded their powers ...." 9 U.S.C. § 10(a)(4).

"Our inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2nd Cir. 1997); *accord Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 930, 931 (11th Cir. 1991) (for purposes of Section 10(a)(4), "[t]he power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed.").

Because the question of "power" is so limited, "[n]either erroneous legal

---

merits." (Doc. 74, ¶ 3). Even if the defendants meant "motions to confirm, vacate or modify" when they said "pleadings" (something they never told the Court), the Court did not preclude the filing of amended motions but merely declined to hold a pretrial conference, and the defendants' remedy if they desired to raise Section 10(a)(4) was to file a motion to amend the motion to vacate or a motion to file a supplemental brief in support thereof. Their tardy assertion of Section 10(a)(4) was done without the slightest color of approval or acquiescence by the Court.

[7]The completion of briefing was delayed by the transfer of the action from the Northern District, by Holiday Isle's bankruptcy filing, and by preliminary skirmishes between the parties in this Court. None of that activity interfered with the defendants' ability to perfect their arguments on motion to vacate before the plaintiffs responded to it.

conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera Corp. v. Prudential-Bache Trade Securities, Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc). Appellate courts routinely hold that Section 10(a)(4) does not afford relief from incorrect legal conclusions[8] or unsupported factual findings,[9] and precedent from both the Eleventh

[8]*E.g.*, *Apex Plumbing Supply*, 142 F.3d at 194 ("[N]either misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award" under Section 10(a)(4)); *DiRussa*, 121 F.3d at 824 (even "obvious legal error" does not trigger Section 10(a)(4)); *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1255-56 (7th Cir. 1994) ("mere error in the interpretation of law," even one resulting in an award of damages "barred by applicable law," is not redressable under Section 10(a)(4)).

[9]*E.g.*, *In re: Arbitration*, 2009 WL 2182898 at *6 (9th Cir. 2009) ("We have repeatedly held that an award may not be vacated even where there is a clearly erroneous finding of fact."); *Bull HN Information Systems, Inc. v. Hutson*, 229 F.3d 321, 330-31 (1st Cir. 2000) ("To determine whether an arbitrator has exceeded his authority under § 10, however, courts do not sit to hear claims of factual or legal error by an arbitrator, ... even when such error is painfully clear ...."); *Eljer Manufacturing*, 14 F.3d at 1254 ("Errors in the arbitrator's ... findings of fact do not merit reversal [,] [n]or does an insufficiency of evidence supporting the decision permit us to disturb the arbitrator's order.").

Circuit[10] and the Supreme Court[11] is in accord. Any assertion of legal or factual error in the arbitrator's decision (other than the simple computational or descriptive mistakes covered by Section 11(a)), must be rectified, if at all, by resort to the non-statutory grounds that the decision is arbitrary and capricious, that its enforcement would be contrary to public policy, or that it was made in manifest disregard of the law. *See Harbert*, 441 F.3d at 910 & n.2 (listing statutory and non-statutory grounds).

The defendants ignore these authorities, arguing instead that relief under Section 10(a)(4) is available when the arbitrator makes an unambiguous and undisputed mistake of fact. (Doc. 92 at 27). They rely for this proposition on a Sixth Circuit case, without any indication that the Eleventh Circuit agrees. Moreover, by its terms this application of Section 10(a)(4) is triggered only by "clear misstatements of undisputed historical fact." *National Post Office Division v. United States Postal Service*, 751 F.2d 834, 843 (6th Cir. 1985). It does not apply to the arbitrator's findings on contested issues. *Id*.; *accord Tanoma Mining Co. v. Local Union No. 1269*, 896 F.2d 745, 748 (3rd Cir. 1990). The correct interpretation of the term "unit" is not a historical fact, nor was the correct

---

[10] *E.g., Scott v. Prudential Securities, Inc*., 141 F.3d 1007, 1014 (11th Cir. 1998) ("It is settled law, however, that courts are generally prohibited from vacating an arbitration on the basis of errors of law or interpretation.") (internal quotes omitted); *Montes v. Shearson Lehman Brothers, Inc*., 128 F.3d 1461-62 (11th Cir. 1997) ("a misinterpretation, misstatement or misapplication of the law" is not grounds for vacating an arbitration award); *Aldred v. Avis Rent-a-Car*, 247 Fed. Appx. 167, 169-70 (11th Cir. 2007) ("Even if an arbitration award clearly contradicts an express term of the contract at issue, the award will not be set aside" under Section 10); *id*. at 169 ("[A] court generally is required to defer to an arbitrator's findings of fact ...."); *cf. Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' International Union*, 980 F.2d 1424, 1429 (11th Cir. 1993) (when construing an arbitration award under a collective bargaining agreement, "[E]ven 'improvident' or 'silly' factfinding is 'hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts.'") (quoting *United Paperworkers International Union v. Misco, Inc*., 484 U.S. 29, 39 (1987)).

[11] *Hall Street Associates*, 128 S. Ct. at 1405 (the FAA does not "ope[n] the door to ... full-bore legal and evidentiary appeals"); *cf. Misco*, 484 U.S. at 39.

interpretation uncontested.

The defendants next argue that Section 10(a)(4) applies when there is "no support whatever for [the arbitrator's] determinations of factual issues," and they insist the arbitrator's decision lacks evidentiary support because three witnesses testified that "unit" excludes common elements. (Doc. 92 at 25-28 (citing *Storer Broadcasting Co. v. American Federation of Television and Radio Artists*, 600 F.2d 45, 47 (6th Cir. 1979))). The defendants have not attempted to show that the Eleventh Circuit stretches Section 10(a)(4) so far. At any rate, the arbitrator ruled that the contract unambiguously defines "unit" to include common elements, (Doc. 94, Exhibit 7 at 9), and such a ruling is a question of law, not of fact.[12] Even were it to be considered a finding of fact, the support for the arbitrator's interpretation comes from the contract documents themselves,[13] and no law requires his interpretation to be echoed by a Greek chorus of witnesses.

Finally, the defendants suggest that the arbitrator "willing[ly]" chose to "disregard clear law as to the meaning" of the term "unit," and thereby "ran afoul of § 10(a)(4)." (Doc. 92 at 26). They cite no authority in support of this proposition. As noted above, while it is true that the Eleventh Circuit has recognized "manifest disregard of the law" as a basis for vacating an arbitration award, it is also true that this basis does not fall within

---

[12]*E.g., McLemore v. Hyundai Manufacturing, LLC*, 7 So. 3d 318, 327 (Ala. 2008) (whether a contract is ambiguous is a question of law, and the construction and legal effect of an unambiguous contract is also a question of law). The defendants admit the arbitrator concluded that the meaning of "unit" is unambiguous. (Doc. 41 at 11).

[13]The arbitrator noted that the P&E collectively refers to a number of documents, including the articles of incorporation, as the "Condominium Documents" and states that the P&E is "subject to all of the terms, conditions and stipulations of the Condominium Documents," which he construed as meaning he was required by the P&E to consider the meaning of "unit" contained in the articles. (Doc. 94, Exhibit 7 at 3, 7-8). That the Court in *Murray* (some six months after the arbitrator's ruling) disagreed with this analysis, 2009 WL 857406 at 15 n.35, does not mean that the arbitrator's decision lacks factual support but only that these two decisionmakers disagree on the documents' proper construction.

Section 10(a)(4). Instead, it is an additional, "non-statutory" ground for vacatur. *Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d at 1459 & n.5 (11th Cir. 1997); *accord Harbert*, 441 F.3d at 910 & n.2; *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1326 & n.3 (11th Cir. 2005). It thus cannot be employed to justify vacatur under Section 10(a)(4).

**C. Manifest Disregard of the Law.**

The defendants suggest the Court can vacate based on manifest disregard of the law, apart from Section 10(a)(4). (Doc. 92 at 27). This argument as well was waived by the defendants' failure to timely raise it. At any rate, "[w]e now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403 (2008); *accord id.* at 1400 ("We hold that the statutory grounds are exclusive."). As noted, "manifest disregard of the law" is not a statutory ground for vacating an award; therefore, it can no longer be relied on for that purpose. *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 350, 355 (5th Cir. 2009).[14]

Nor could the defendants establish a manifest disregard of the law even had *Hall Street Associates* left that option open to them. In the first place, the manifest disregard must be of "the law," and "[t]he contract is not part of the applicable law, but the agreement of the parties to which the law is applied." *Harbert*, 441 F.3d at 912. Consequently, a "misapplication of the contract is [not] a misapplication of the law." *Id.* While the defendants suggest the arbitrator's decision violated Alabama law in the form of the Alabama Uniform Condominium Act ("the Act"), his opinion plainly is based on contractual construction, not statutory interpretation. The P&E, which contained the default provision on which recovery was based, does not define "unit." The declaration does, by reference to the Act, which defines the term as exclusive of common elements.

[14]The defendants acknowledged as much in their opening brief. (Doc. 41 at 3-4).

The articles of incorporation, however, define "unit" as including common elements. The defendants, based on language in the contract documents, argue the arbitrator should have followed the trail from the P&E to the declaration and thence on to the Act, but the arbitrator concluded that, based on other language in the contract documents, the trail led from the P&E to the articles. (Doc. 94, Exhibit 7 at 7-10). The arbitrator did not construe the Act but the contract documents.

The defendants suggest that the Act did not allow the arbitrator to look to the articles rather than the declaration. (Doc. 41 at 12-15). If the defendants are correct (and the Court does not so decide), that might reflect an error of law by the arbitrator, but it would not reflect a manifest disregard of the law. An arbitrator cannot "disregard" a law of which he is unaware; on the contrary, the defendants must show "that the arbitrator *actually recognized* a clear rule of law and deliberately ignored it." *Harbert*, 441 F.3d at 912 (emphasis added). The defendants offer no evidence that they ever alerted the arbitrator to this asserted legal rule, and the Court's unassisted review of the almost 2,000 pages of arbitration records submitted by them discloses no mention of any such statutory restriction. (Doc. 41, Exhibit B; Doc. 81, Exhibits A-M).

Only once has the Eleventh Circuit found a manifest disregard of the law, and the peculiar circumstances of that case are so extraordinary as to make it unlikely that invocation of the doctrine will ever again succeed. *See Harbert*, 441 F.3d at 911 (noting the "rare nature" of the doctrine). In *Montes*, defense counsel expressly admitted that the law required that his client lose, and he repeatedly requested the arbitrators to ignore the law and rule in his clients' favor regardless of the law. Moreover, the panel in its award noted this request and did nothing to distance itself from it. 128 F.3d at 1459, 1462, 1464; *see also Harbert*, 441 F.3d at 911 (summarizing the facts of *Montes*). Even had the defendants argued to the arbitrator that the Act prohibited him from resorting to the articles, the plaintiffs did not concede the legal point, nor did they ask the arbitrator to rule in their favor despite acknowledging the legal error of such a ruling. Nor did the

arbitrator state or suggest he believed he was acting contrary to established law. Whether or not manifest disregard of the law is confined to the pattern of *Montes*, as in *Harbert* the defendants have not "come within shouting distance" of its exception. 441 F.3d at 911.

**D. State Law.**

The arbitration clause in the P&E states that all disputes will be governed by Alabama law. (Doc. 94, Exhibit 1, ¶ 20). The defendants understand this provision to allow them to seek upset of the arbitrator's ruling under Alabama law as well as under the FAA. (Doc. 41 at 3-4). The plaintiffs, citing *Hall Street Associates*, insist that the defendants cannot have their cake and eat it, too, but must proceed under one regime or the other. (Doc. 94 at 13-14). The Court cannot discern any such required choice. On the contrary, the Supreme Court "d[id] not purport to say that [Sections 10 and 11] exclude more searching review based on authority outside the statute *as well*," 128 S. Ct. at 1406 (emphasis added), a phrase that connotes cumulative tracks, not mutually exclusive ones. Moreover, after resolving the FAA issue, the Supreme Court remanded to the appellate court to consider whether the appellant might seek additional review on non-FAA grounds, *id*. at 1406-08, which would be an exercise in futility if the appellant's reliance on the FAA foreclosed reliance on non-FAA grounds.

The defendants invoke Alabama Code § 6-6-14, (Doc. 41 at 3), part of the Alabama Arbitration Act ("AAA"). The plaintiffs respond that the Act applies only when the agreement to arbitrate was made after the dispute arose; because the P&E, with its arbitration agreement, preceded the parties' dispute by two years, the plaintiffs conclude that Section 6-6-14 cannot apply here. (Doc. 94 at 13). They cite no authority for this proposition, and the Court's cursory review reflects numerous instances in which Alabama's appellate courts have entertained appeals under the Act in the context of disputes arising after the agreement to arbitrate. *E.g., H & S Homes, L.L.C. v. McDonald,* 910 So. 2d 79 (Ala. 2004), *overruled on other grounds, Horton Homes, Inc. v. Shaner,*

999 So. 2d 462 (Ala. 2008); *Credigy Receivable, Inc. v. Day*, 3 So. 3d 206 (Ala. Civ. App. 2008); *see also Birmingham News Co. v. Horn*, 901 So. 2d 27, 44 (Ala. 2004) ("The AAA has had throughout its history, until the last decade, a field of operation only with respect to post-dispute agreements to arbitrate."), *overruled on other grounds, Horton Homes, Inc. v. Shaner*, 999 So. 2d 462 (Ala. 2008); *Lanier v. Old Republic Insurance Co.*, 936 F. Supp. 839, 847 (M.D. Ala. 1996) ("[T]he court concludes that the AAA applies to pre-dispute arbitration agreements.").

Ultimately, however, resort to Alabama law does not advance the defendants' ball, because the Alabama Supreme Court has held that, at least in cases (like this one) implicating the FAA, Section 10 supplies the exclusive list of grounds to vacate. *Horn*, 901 So. 2d at 46-47. Nor would it assist the defendants to resort directly to Section 6-6-14, because its only grounds for relief are "fraud, partiality, or corruption," a list narrower than that in Section 10 and implicating only subsections (a)(1) and (2). *Id*. Finally, the defendants have never alleged that the arbitrator's award is the product of fraud, partiality or corruption, and by their silence they have waived any such argument.

**E. Due Process.**

Without amplification, the defendants posit that they "will be denied due process of law unless this Court modifies or vacates of [sic] the award, in accordance with the Federal Arbitration Act." (Doc. 41 at 15). The defendants' failure to offer discussion or authority in support of their raw conclusion is itself sufficient reason to reject the argument. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue."). Any due process argument is therefore waived. *Id*.

It is also meritless. The Due Process Clause requires state action, and "we agree with the numerous courts that have held that the state action element of a due process

claim is absent in private arbitration cases." *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995). "We likewise ... hold that the mere confirmation of a private arbitration award by a district court is insufficient state action to trigger the application of the Due Process Clause." *Id*. at 1192.

**F. Conclusion.**

The defendants' motion to vacate or modify is due to be denied.

**II. Supplemental Motion to Alter or Vacate.**

As noted, the arbitrator awarded damages against Wesch and Mitchell as well as against Holiday Isle. Wesch and Mitchell argue that the award as against them should be set aside for various reasons.

**A. Section 11(a).**

Wesch and Mitchell argue that the award as against them constitutes an evident material mistake in the description of a person, thing or property referred to in the award. (Doc. 50, ¶ 8). As discussed in Part I.A, this section does not apply when the description correctly reflects the arbitrator's intent. The arbitrator specifically made his award against "the respondents," whom he defined as "Holiday Isle, LLC, The Mitchell Company, Inc. and Paul C. Wesch." (Doc. 94, Exhibit 7 at 1, 15). There is not the slightest indication that the arbitrator did not intend his award to extend to Wesch and Mitchell, and the defendants suggest none. The arbitrator plainly realized precisely what he was doing in awarding relief against Wesch and Mitchell.

**B. Section 10(a)(4).**

Wesch and Mitchell argue that the arbitrator exceeded his powers because: (1) they were not parties to the arbitration agreement; (2) the arbitrator's award was not made

under any federal or state statute; (3) the plaintiffs identified no legal basis for holding them liable; and (4) the plaintiffs presented no evidence to establish their liability. (Doc. 50 at 1-2; Doc. 99 at 3, 6, 10). None of these arguments succeeds.

**1. Non-party to arbitration agreement.**

It is true that "[a] party cannot be forced to arbitrate an issue which it did not agree to arbitrate," and ruling on such an issue exceeds the arbitrator's powers. *Kahn v. Smith Barney Shearson, Inc.*, 115 F.3d 930, 933 (11th Cir. 1997); *accord Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 n.20 (11th Cir. 2004) ("If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it."). Wesch and Mitchell, however, were not forced to arbitrate. On the contrary, they explicitly "join[ed] in the request by Plaintiffs that an arbitrator be appointed by the Court." (Doc. 15). When the plaintiffs filed an arbitration complaint naming them as defendants and seeking damages and other relief against them, (Doc. 94, Exhibit 3), they filed an answer that denied all material allegations and raised over 20 affirmative defenses, none of which suggested opposition to arbitration. (*Id.*, Exhibit 4). Wesch and Mitchell then proceeded to the arbitration hearing and filed a post-hearing memorandum, (*id.*, Exhibit 6), all without any hint they opposed arbitration on any ground.

"Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Construction Equipment Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (internal quotes omitted). As made plain above, Wesch and Mitchell consented to arbitrate and expressly encouraged the district court to send them there. Even if, in their heart of hearts, they continued to oppose arbitration, by participating in those proceedings without expressing their true feelings they waived (or are estopped to assert) any right to challenge the award against them on that basis. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 n.5 (11th Cir. 2004) (describing *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580, 591 (7th

Cir. 2001)); *accord Opals on Ice Lingerie v. Bodylines, Inc*., 320 F.3d 362, 368 (2nd Cir. 2003).

**2. Federal or state statute.**

The arbitration complaint alleged that Wesch "is subject to personal liability on Plaintiffs' claims, pursuant to the applicable federal statutes." (Doc. 94, Exhibit 3, ¶ 3). The arbitrator's award expressly rejected the plaintiffs' claims based on federal and state statutes. (*Id*., Exhibit 7 at 11-15). Wesch and Mitchell assert, without amplification, that this state of affairs precludes an award against them and renders the arbitrator's award beyond his power. (Doc. 50, ¶¶ 1-2, 9).

Wesch's argument[15] depends on the false premise that the quoted language represents the arbitration complaint's only statement as to his liability, tying liability exclusively to violation of federal statutes.[16] It is true that the plaintiffs sought to saddle Wesch with liability for violations of federal law,[17] but the arbitration complaint also demanded compensation from Wesch under other causes of action. In particular, it alleged that each P&E is null and void under paragraph 6(B) for failure to complete within two years, and it demanded both a declaration that Wesch is obligated to return the plaintiffs' deposits and an award of damages in that amount against the Developers (defined to include Wesch). (Doc. 94, Exhibit 3 at 2, 36-38). The arbitration complaint also alleged that Wesch (and Mitchell): improperly called the plaintiffs' letters of credit

---

[15]Although this argument is nominally raised in favor of Mitchell as well, it can have no application as to it, since there is no similar allegation as to Mitchell in the arbitration complaint.

[16]Wesch's reference to state statutes is unexplained and apparently irrelevant to his argument.

[17]The arbitration complaint twice alleged that Wesch is personally liable for violations of the Interstate Land Sales Full Disclosure Act. (Doc. 94, Exhibit 3, ¶ 88 n.5; *id*., ¶ 97 n.6).

by misrepresenting to the issuing banks that the plaintiffs were in default; converted the plaintiffs' earnest money deposits; wrongfully called the letters of credit; breached a fiduciary duty to the plaintiffs; and concealed material facts concerning their use of the earnest money deposits. (*Id.* at 30-31, 38-39, 41-43).

As noted, Wesch never objected to the arbitrator deciding these claims with respect to him, and he thereby consented to their resolution by the arbitrator and/or waived (or is estopped to assert) any argument that the matter was not submitted to him. Consequently, the arbitrator did not exceed his power by awarding relief against Wesch under a non-statutory theory.

**3. Legal basis for liability.**

Each P&E was entered between the plaintiff and Holiday Isle only, and the plaintiffs have never argued otherwise.[18] Wesch and Mitchell argue that the plaintiffs did not offer any legal basis for holding them liable for default under Section 6(B) of the P&E. The plaintiffs respond that, even if this is true,[19] it is immaterial because Section 10(a)(4) does not provide relief on such grounds. (Doc. 93 at 15-16). As discussed in Part I.B, the plaintiffs are correct; Wesch and Mitchell are complaining of mere legal error, for which the FAA offers no relief.[20] Moreover, and as discussed in Part II.E, the argument insupportably assumes that the arbitrator's award against Wesch and Mitchell was based on a contract theory.

---

[18]The P&E identified the contracting party as Holiday Isle, "hereafter referred to as 'Developer.'" (Doc. 94, Exhibit 1 at 1). The "Developer ... caused [the P&E] to be executed and accepted this offer to purchase," and "Holiday Isle, LLC" is identified as the accepting party. (*Id*. at 25).

[19]It plainly is untrue as to Mitchell. *See infra* Part II.E.

[20]Wesch and Mitchell did not assert that the arbitrator manifestly disregarded the law with respect to their liability, and they therefore have waived any such argument. Nor did they make the stiff showing required by that doctrine. *See* Part I.C, *supra*.

**4. Evidentiary basis for liability.**

Wesch and Mitchell argue that the arbitrator exceeded his power by finding them liable for breach of contract without evidence proving they exercised complete control and domination over Holiday Isle. (Doc. 99 at 7). They do not assert that Section 10(a)(4) extends to review of the evidentiary sufficiency of an arbitrator's findings and, as discussed in Part I.B, it does not.

Instead, Wesch and Mitchell contend that the "uniquely worded" arbitration clause requires such proof as a predicate to a finding of liability. (Doc. 99 at 9). That clause provides in pertinent part that the arbitrator "shall render a decision ... based on a traditional and standard interpretation of the laws of the State of Alabama." Doc. 94, Exhibit 1, ¶ 20). Wesch and Mitchell argue that this language required the arbitrator to base any finding of their liability on proof of the complete control and domination that Alabama law requires as a predicate to a finding of alter ego status. (Doc. 99 at 6-8, 9-10).

This position is foreclosed by *Hall Street Associates*. There, the parties' arbitration agreement provided that any award could be vacated or modified by the district court if its findings of fact were unsupported by substantial evidence or if its conclusions of law were erroneous. 128 S. Ct. at 1400-01. The Supreme Court rejected the view that the grounds for vacatur or modification provided by Sections 10 and 11 can be expanded by agreement; instead, the statutory grounds are exclusive. *Id*. at 1403; *accord Kyocera*, 341 F.3d at 1000, 1002 (agreement that the arbitrator would decide based on the evidence submitted and California law was beyond, and precluded by, Section 10(a)(4)).

**C. Section 11(b).**

Modification of an award is permitted "[w]here the arbitrators have awarded upon

a matter not submitted to them." 11 U.S.C. § 11(b). For the first time in their reply brief, Wesch and Mitchell invoke Section 11(b). (Doc. 99 at 1, 10). As discussed in Part I.B, such a presentation comes too late and furnishes no grounds for relief. At any rate, the analysis under Section 11(b) looks merely to whether the parties have agreed to submit an issue to the arbitrator for resolution. *See Davis*, 59 F.3d at 1194. As discussed in Parts II.B.1 and 2, Wesch and Mitchell submitted to the arbitrator the issue of their liability for the default under the P&E.

**D. Due Process.**

Wesch and Mitchell posit that denying their motion would deny them due process. (Doc. 50, ¶ 10). This argument is both procedurally barred and substantively meritless for reasons expressed in Part I.D.

**E. Rational Basis.**

The foregoing discussion exhausts the arguments presented by Wesch and Mitchell. However, the plaintiffs have injected another basis for vacating the award against these defendants. According to the plaintiffs, the award as against Wesch and Mitchell can be vacated if they show there is no "rational basis" for imposing it. (Doc. 93 at 2, 14, 17-19).

The plaintiff's invocation of rational basis review is surprising, because it does not fall within Section 10 or 11 but is part of a non-statutory consideration of whether the award is arbitrary and capricious. *E.g.*, *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277, 1289 n.9 (11th Cir. 2002); *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778-79 (11th Cir. 1993). Elsewhere in their briefing, the plaintiffs declare it "highly questionable" whether the non-statutory ground of manifest disregard of the law could survive the Supreme Court's decision in *Hall Street Associates*, (Doc. 96 at 6-7), a skepticism that would appear equally appropriate with respect to arbitrary and capricious

analysis. Nevertheless, because the plaintiffs acknowledge that Wesch and Mitchell may obtain relief under this theory, the Court examines it.

The Court agrees with Wesch and Mitchell that there is no rational basis for holding them responsible for Holiday Isle's breach of contract. With respect to Wesch, it is well settled under Alabama law that a non-party to a contract cannot be held liable for its breach.[21] The plaintiffs respond that a corporate officer may be held liable for his own improper conduct, even if committed as part of his employment duties. (Doc. 93 at 18). True enough but, as the plaintiffs' authorities make clear, only with respect to tort claims.[22]

With respect to Mitchell, the arbitration complaint alleges that it was the alter ego of Holiday Isle, (Doc. 97, Exhibit 3, ¶ 2), and the defendants concede that alter ego status is a legally sufficient basis for holding Mitchell responsible for Holiday Isle's default. (Doc. 99 at 1-2, 7, 10). However, rational basis review also looks at the evidence presented in support of the legal theory. *E.g., Riccard*, 307 F.3d at 1289 n.9; *Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' International Union*, 980 F.2d 1424, 1430 (11th Cir. 1993), so the Court turns to that inquiry.

The "elements essential" to piercing the corporate veil on an alter ego theory are the following: (1) "complete control and domination of the subservient corporation's finances, policy and business practices"; (2) "[t]he control must have been misused by the dominant party"; and (3) "[t]he misuse of this control must proximately cause the harm or

---

[21]*E.g., Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337, 343 (Ala. 1993) ("Rollison was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts."); *Henson v. Celtic Life Insurance Co.*, 621 So. 2d 1268, 1270 n.2 (Ala. 1993) ("Obviously, the defendant Jones cannot be held liable for the breach of a contract to which he was not a party ....").

[22]*Connect, Inc. v. Ross*, 644 So. 2d 867, 869 (Ala. 1994); *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983); *Sexton v. Principal Financial Group*, 920 F. Supp. 169, 172 (M.D. Ala. 1996).

unjust loss complained of." *Messick v. Moring*, 514 So. 2d 892, 894-95 (Ala. 1987).

With respect to control and domination, there was evidence that Mitchell is the sole member of Holiday Isle; that Mitchell created Holiday Isle for the sole purpose of pursuing the condominium development; that Holiday Isle has no significant assets beyond the development; that Holiday Isle conducts its business out of Mitchell's offices (and two condominium units); that Mitchell executed the P&Es on behalf of Holiday Isle; that Holiday Isle has no employees; that Wesch, who is the executive vice-president of Mitchell, directed the development of the project as part of the resort development division of Mitchell; and that Wesch was generally authorized to act on behalf of Holiday Isle. (Doc. 93 at 18; Doc. 99 at 4; Doc. 41, Exhibit B at 1052-56; Doc. 94, Exhibit 1 at 25). Even were the Court to "consider such evidence to be insufficient to establish" complete control and domination, under rational basis analysis "even improvident or silly factfinding is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." *Sullivan*, 980 F.2d at 1430 (internal quotes omitted). The Court therefore assumes for present purposes that there was a rational evidentiary basis for the arbitrator to conclude that Holiday Isle was completely controlled and dominated by Mitchell.

However, there is no evidence that Mitchell misused its control and domination of Holiday Isle. Even more clearly, there is no evidence that any misuse by Mitchell caused the plaintiffs' loss, since Holiday Isle's failure to complete the units within two years is utterly divorced from any abuse by Mitchell of the corporate form. Indeed, had Mitchell not directed Holiday Isle's activities, even wrongly, completion would have been impossible, since Holiday Isle had no employees or assets with which to develop the project.

That, however, is not the end of the matter. "The onus is on the party requesting the vacatur to refute ... *every* rational basis upon which the arbitrator *could have* relied." *Brown*, 994 F.2d at 779 (emphasis added, internal quotes omitted). That is, Wesch and

Mitchell must eliminate all "factual and legal bases" that the arbitrator "could have rationally relied on." *Sullivan*, 980 F.2d at 1430. They have eliminated breach of contract as a rational basis for the arbitrator's award, but they have not addressed the possibility that the arbitrator's award against them is based on some other claim asserted in the arbitration complaint and thus properly before the arbitrator.[23] Because Wesch and Mitchell did not attempt to show that the arbitrator could not have rationally based his award on any of these theories, they have not met their burden to show that no rational basis could support the award.[24]

**F. Conclusion.**

There is something disquieting about the supplemental motion to vacate. Through it, Wesch and Mitchell attempt to throw out the arbitrator's award based on arguments they never presented him concerning their exposure to liability. Arbitrators in general, and this one in particular, are talented and thoughtful people, but they are neither perfect nor clairvoyant. If Wesch and Mitchell believed there was no legal or factual basis to find them liable even were Holiday Isle to be found liable, it was their responsibility to so

---

[23]These claims are listed in Part II.B.2. The defendants suggest that the arbitrator expressly declined to decide these claims. (Doc. 99 at 12). In fact, he stated only that he would not consider other issues (such as the meaning of "completed") concerning the failure-to-complete claim. (Doc. 94, Exhibit 7 at 11).

[24]"Rational basis" review is triggered only when the arbitrator provides no rationale for his award; if a rationale is given, the inquiry proceeds directly to whether that reason is arbitrary and capricious. *E.g.*, *Brown*, 994 F.2d at 779-80. Wesch and Mitchell assume the arbitrator's award against them was based on breach of Section 6(B) because that was the basis of his award against Holiday Isle, but the arbitrator articulated no such rationale with respect to Wesch and Mitchell. Thus, rational basis review applies. Even had the arbitrator expressly based his award against Wesch and Mitchell on breach of contract, they could not prevail, because that would simply trigger arbitrary and capricious review, and neither the defendants nor the plaintiffs mention or invoke such review.

inform the arbitrator, yet they never did so — not in their answer with its 21 affirmative defenses, not in their post-hearing memorandum, and not in over 1,000 pages of hearing transcript.[25] Even had their motion to vacate otherwise held merit, the Court would be loath to reward their silence before the arbitrator. *See Dean v. Sullivan*, 118 F.3d 1170, 1172 (7th Cir. 1997) ("A disputant cannot stand by during arbitration withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging.") (internal quotes omitted).

The supplemental motion of Wesch and Mitchell to alter or vacate is due to be denied.

**III. Application to Confirm Award.**

"[A]ny party to the arbitration may apply to the court ... for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. As discussed in Parts I and II, the award as to the prevailing plaintiffs is not to be vacated, modified or corrected. Thus the application, construed as a motion, is due to be granted.

**IV. Motions to Vacate.**

The losing plaintiffs filed two motions to vacate, one by Robert Downs, Gregory Downs and Bill Murry with respect to two units, and another filed by Richard Hambric with respect to a third. Between them, the motions advance three arguments in favor of vacatur. The first is common to both motions, the second is raised only by the first

---

[25]Their suggestion that they properly alerted the arbitrator to their position in their answer by (along with Holiday Isle) generally denying all material allegations of the arbitration complaint and stating that the plaintiffs' claims failed to state a claim, (Doc. 99 at 8), merits no discussion. The question is not whether they preserved the issue but whether they satisfied their duty to advise the arbitrator why they could not be held liable, so that he could make an informed decision. The former they may have accomplished, but the latter they plainly did not.

motion, and the third is asserted only by Hambric.

**A. Completion Date.**

Each P&E provided that the two-year completion period would run from its effective date, which was defined as the later of April 1, 2005 or the date of its execution. (Doc. 94, Exhibit 1, ¶ 6(B)). Each of the losing plaintiffs executed the P&E more than two years before the completion date found by the arbitrator, but Holiday Isle executed the P&E less than two years before. The arbitrator, using the date of Holiday Isle's execution, found these P&Es were not null and void for failure to complete within two years. (Doc. 94, Exhibit 7 at 11).

Under the principles discussed in Parts I and II, the arbitrator's decision is impeccable. The losing plaintiffs nevertheless insist that the decision as to them should be vacated because the arbitrator's opinion does not address their argument that the two-year period should run from the date (more than two years before the completion date) that Holiday Isle manifested its assent to the P&E by beginning construction on the project. Consequently, they conclude in the language of Section 10(a)(4), the arbitrator "so imperfectly executed [his powers] that a mutual, final, and definite award upon the subject matter submitted was not made." (Doc. 67 at 3).

The losing plaintiffs identify no authority for the remarkable proposition that Section 10(a)(4) requires vacatur of an award any time an arbitrator expressly resolves a claim but does not expressly resolve every argument made by the parties concerning the claim. This could hardly be a correct statement of the law, given that "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 598 (1960).

It may be that an arbitrator's failure to explicitly address all arguments results in some aesthetic "imperfection," but Section 10(a)(4) provides redress only if, as a result of the imperfect exercise of power, no mutual, final, definite award was made. The losing

plaintiffs do not argue that no such award was made, and it patently was; the arbitrator ruled that the losing plaintiffs' units were completed less than two years after the effective date of the P&Es and that the defendants, rather than the losing plaintiffs, were entitled to the earnest money. *See Conn Tech Development Co. v. University of Connecticut Education Properties, Inc*., 102 F.3d 677, 686 (2nd Cir. 1996) ("An award is mutual, definite and final if it resolves all issues submitted to arbitration, and determines each issue fully so that no further litigation is necessary to finalize the obligations of the parties.") (internal quotes omitted); *Remmey v. PaineWebber, Inc*., 32 F.3d 143, 150-51 (4th Cir. 1994) (a ruling that dismisses all claims is final and definite, even if it does not mention each of the claims separately).

**B. ILSA Claim.**

Unable to succeed on the same claim as their co-plaintiffs, the losing plaintiffs argue they should prevail on their claim for damages under the Interstate Land Sales Full Disclosure Act ("ILSA"). The arbitration complaint contained two claims under ILSA: one for damages under 15 U.S.C. § 1709 and one for revocation under 15 U.S.C. § 1703. (Doc. 97, Exhibit 3 at 31-33, 34-36). The arbitrator rejected the ILSA claims as barred by the two-year statute of limitations applicable to rescission claims. (*Id*., Exhibit 7 at 13-15).

The losing plaintiffs argue that the arbitrator imperfectly exercised his powers within the meaning of Section 10(a)(4) by disregarding the three-year statute of limitations applicable to damages claims. (Doc. 67 at 3-4, 8, 12-14). This argument fails for the reasons expressed in Part IV.A. That the arbitrator rejected the losing plaintiffs' damages claim on limitations grounds by applying the wrong limitations period constitutes at most an error of law not redressable under Section 10(a)(4), and his failure to expressly address the plaintiffs' argument concerning the three-year limitations period did not and could not keep him from rendering a mutual, final, definite award.

In their reply brief, the losing plaintiffs abruptly change tacks. They no longer argue that the arbitrator rejected their ILSA damages claim by using an incorrect limitations period; instead, they maintain that he never ruled on the ILSA damages claim at all. (Doc. 97 at 1, 3, 5-6). As discussed in Part I.B, a reply brief is too late to introduce new arguments. Accordingly, the losing plaintiffs' new argument is rejected as untimely.

Nor is it tenable. Twice the arbitrator referred to ILSA "claims" in the plural, (Doc. 97, Exhibit 7 at 13, 14), which he could do only by considering both the rescission claim and the damages claim. Moreover, he discussed the "damages" available under ILSA, (*id*. at 14), which makes sense only in the context of a damages claim. Indeed, the losing plaintiffs concede that the arbitrator's catalog of damages described the appropriate elements of relief under their damages claim. (Doc. 67 at 14). The arbitrator clearly rejected the defendants' damages claim under ILSA.

The losing plaintiffs also posit, without explanation, that the arbitrator's action with respect to their ILSA damage claim offends Section 11(b). (Doc. 67 at 3-4). That claim was expressly submitted to the arbitrator, so his ruling on it could not open the door to relief under that section.

**C. Affirmative Relief.**

The arbitration complaint sought a declaration that the P&Es were null and void for failure to timely complete the units, along with refund of the sums they paid (cash deposits and letters of credit) as earnest money. (Doc. 94, Exhibit 3 at 36-37). The defendants' answer alleged that the plaintiffs were in default under the P&Es for failure to close, and it sought an award of the "contractually agreed upon and liquidated damages," consisting of "cash[ing] the letters of credit and accept[ing] the proceeds of the letters of credit as its liquidated and agreed upon damages." (*Id*., Exhibit 4 at 1-2). The issue submitted to the arbitrator was thus who was entitled to the cash deposits and letters of credit.

Hambric did not make a cash deposit, and his letter of credit expired in March 2007 without being called. Thus, as to him, there was neither a deposit nor a letter of credit that could be awarded to either party. The arbitrator nevertheless awarded Holiday Isle $114,600 as against Hambric, which necessarily is not an award of a cash deposit or letter of credit, as the arbitrator recognized. (Doc. 97, Exhibit 7 at 15). Hambric argues that the arbitrator exceeded his powers under Section 10(b)(4) by ruling on an issue not submitted to him and likewise violated Section 11(b). (Doc. 68 at 1, 3, 8-16, 18-19).

The defendants do not disagree that the arbitration complaint fails to submit the issue of Hambric's liability to Holiday Isle beyond his (expired) letter of credit. Instead, they argue the issue was submitted by the following language in their answer: "Holiday Isle is entitled to Claimants' deposits and proceeds of any letters o [sic] credit as liquidated damages." (Doc. 92 at 15 (quoting Doc. 97, Exhibit 4 at 6)). On its face, however, this language limits the issue to the fate of the cash deposits and letters of credit, neither of which could support an award against Hambric. This statement was inadequate as a matter of law to submit to the arbitrator the issue whether the defendants were entitled to affirmative relief against Hambric beyond retaining the proceeds of his non-existent letter of credit. *See Davis*, 59 F.3d at 1195 (a statement of claim requesting costs did not submit to the arbitrator the issue of attorney's fees). Accordingly, by awarding affirmative relief against Hambric, the arbitrator exceeded his power under Section 10(a)(4) and awarded on a matter not submitted to him under Section 11(b). *Id*. at 1194.

**D. Conclusion.**

Hambric's motion to vacate is due to be granted. The other losing plaintiffs' motion to vacate is due to be denied.

## CONCLUSION

The parties bargained for arbitration, and they got what they bargained for. As with litigation, the result of arbitration often leaves half or more of the parties dissatisfied, but by choosing arbitration they chose both the possibility of a legally or factually objectionable result and the extremely narrow judicial review that the FAA provides. For the reasons set forth above, the defendants' motion to vacate or modify is **denied**; the supplemental motion of Wesch and Mitchell to alter or vacate is **denied**; and the motion to vacate filed by Downs, Downs and Murry is **denied**. For the reasons set forth above, the motion to vacate filed by Hambric is **granted**, and the prevailing plaintiffs' motion to confirm is **granted**. Judgment shall be entered accordingly by separate order.[26]

DONE and ORDERED this 4th day of August, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

[26]Because the award is by unit rather than by plaintiff, in order to convert the award into a judgment a proposed judgment is required. The parties are **ordered** to confer in good faith, on or before **August 10, 2009**, for the purpose of agreeing to a form of judgment. The plaintiffs are **ordered** to file and serve, on or before **August 12, 2009**, a proposed form of judgment agreed to by the parties if possible, otherwise, their own proposed form.